**K.K.D. IMPORTS, INC., Plaintiff,**

v.

**KARL HEINZ DIETRICH GmbH & CO. INTERNATIONAL SPEDITION, Defendant.**

No. 98 Civ. 7588(LAK).

United States District Court, S.D. New York.

Feb. 23, 1999.

---

Bethany A. Ralph, Lazarus & Lazarus, P.C., New York, NY, for plaintiff.

James H. Hohenstein, Alan Heblack, Holland & Knight LLP, New York, NY, for defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff K.K.D. Imports, Inc. ("KKD") seeks damages of more than $2 million against defendant Karl Heinz Dietrich GmbH & Co. International Spedition ("Dietrich"), a German freight forwarder, on the ground that Dietrich negligently misdirected freight shipments. Jurisdiction is based on diversity of citizenship or, more precisely, alienage. Dietrich moves for summary judgment dismissing the complaint on the ground that the forum selection clauses in the parties' contracts foreclose New York as an appropriate forum or, alternatively, that the claim is barred by the contractual limitations period.

*Facts*

There are no material issues of fact. KKD began using Dietrich's services in 1995. From December 15, 1995 through September 26, 1997, Dietrich issued to KKD sixty-six invoices, each of which bore the legend "ALL BUSINESS IS UNDERTAKEN SUBJECT TO THE STANDARD TRADING CONDITIONS OF THE GERMAN INSTITUTE OF SHIPPING & FORWARDING AGENTS (ADSP.)." The ADSP standard conditions provide that the legal relationships between the forwarder (Dietrich) and its customer (KKD) are governed by German law. They provide further that:

> "The jurisdiction for all lawsuits which arise out of, or in connection with, the relationships created by the forwarding order is, for all parties concerned (insofar as they are 'full traders' [Vollkaufleute], the place of that commercial establishment of the forwarder to which the order is directed; for claims against the forwarder this jurisdiction is the sole one.)" [1]

It is undisputed that both Dietrich and KKD are "full traders" or "Vollkaufleute." [2]

The shipments at issue here are those with respect to which the forty-second through sixty-sixth invoices were issued.[3] KKD's affidavit concedes that it received the first forty-one invoices,[4] and its memorandum concedes that it received the invoices for the subject shipments, albeit after the goods were delivered.[5] It did not object to the form of any of the sixty-six invoices at any time prior to the institution of this action.[6]

*Discussion*

Plaintiff objects to the enforcement of the forum selection clause incorporated by reference in the invoices on several grounds.

1. KKD argues first that "a forum selection clause is merly [*sic*] one of many factors

---

1. Bartel Decl. Ex. 1, Part XV, Clause 65(b), at 26.

2. Pl. 56.1 St. ¶ 10; Def. 56.1 St. ¶ 10.

3. Pl. Mem. 4 (stating that the subject invoices are Bartel Decl. Exs. 44–68).

4. *E.g.,* Kunen Aff. ¶ 9.

5. Pl. Mem. 4.

6. Pl. 56.1 St. ¶¶ 3, 6; Def. 56.1 St. ¶¶ 3, 6: *see* Kunen Aff. ¶ 9.

to be considered by the Court in the determination of a motion for transfer of venue pursuant to 28 U.S.C. § 1404" and that the inconvenience to KKD of litigating this case in Germany or elsewhere would be so great as to render its enforcement unfair.[7] But Section 1404 has nothing to do with the analysis.

 The enforceability of forum selection clauses in admiralty, diversity and federal question cases is governed by the doctrine of *M/S Bremen v. Zapata Off–Shore Co.*[8] Under *Bremen*, inconvenience is insufficient to avoid a forum selection clause absent proof that "trial in the contractual forum will be so gravely difficult and inconvenient that [the party resisting enforcement of the clause] will for all practical purposes be deprived of his day in court."[9] While litigation in Germany or elsewhere doubtless would be less convenient for KKD than litigation in New York for many of the reasons it claims (although it has exaggerated the difficulties quite substantially[10]), KKD has not remotely approached the showing necessary to defeat enforcement of the clause on this ground.

2. KKD next argues that it did not receive the invoices for the shipments here at issue until after the shipments were made and therefore cannot be said to have agreed to the forum selection clauses incorporated therein by reference.[11] But the argument is unavailing.

 Contracts such as this "may validly incorporate by reference terms from other documents or agreements."[12] It is equally well established that "[e]vidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms."[13] The issue here is whether the undisputed facts, viewed in the light most favorable to KKD, require the conclusion that the parties incorporated the choice of forum clause in their contracts with respect to the shipments at issue here by virtue of their prior course of dealing.

In *Pervel Industries, Inc. v. T M Wallcovering, Inc.*,[14] the Second Circuit affirmed a summary determination by the district court that a fabric distributor was bound by an arbitration clause contained on the reverse side of a printed order confirmation form where the manufacturer had a well established custom of sending such confirmations and the buyer repeatedly had made previous purchases with respect to which it had received and retained such forms without objection.[15]

The Circuit revisited the issue in *New Moon Shipping*, focusing specifically on the procedural mechanisms appropriate to consideration of a motion to dismiss on the basis of a forum selection clause. Holding that district courts may not resolve genuine issues

7. Pl. Mem. 2–3.

8. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See Jones v. Weibrecht*, 901 F.2d 17 (2d Cir.1990); *Composite Holdings, L.L.C. v. Westinghouse Electric Corp.*, 992 F.Supp. 367, 368–69 (S.D.N.Y.1998); *see also Strategic Marketing & Comm. Inc. v. Kmart Corp.*, No. 98 Civ. 1367(RLC), 1998 WL 734360, at *4 (S.D.N.Y. Oct.20, 1998).

9. *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 32 (2d Cir.1997) (quoting *Bremen*, 407 U.S. at 18, 92 S.Ct. 1907).

10. Even assuming that KKD would be obliged to transport its witnesses to Germany, which is far from clear given the civil law system in that nation, and that documents and testimony would have to be translated into German, the burden on KKD of proceedings in a foreign court is no different than that which it seeks to impose on Dietrich, a German company, by compelling it to litigate in New York. The assertion that the testimony of non-party witnesses would be impossible to procure for a trial in Germany (Kunen Aff. ¶ 3) is made by a lay witness who offers no basis for supposing that he has any basis of knowledge on the subject and, in any case, is at odds with the fact that Germany is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444, *reprinted* in 28 U.S.C.A. § 1781.

11. Pl. Mem. 4.

12. *New Moon Shipping Co.*, 121 F.3d at 30.

13. *Id.* at 31.

14. 871 F.2d 7 (2d cir.1989).

15. *Accord, e.g., Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 135, 399 N.E.2d 1154 (1979); *see also* N.Y. Unif. Comm. C. § 1–205(3) & *cmt. 2* (McKinney 1993).

of fact material to the existence of an established course of dealing without an evidentiary hearing, and concluding that such issues were present in the case before it in view of the complexity of the relationship between the parties among other factors, it nevertheless affirmed its holding in *Pervel Industries* that standard terms contained in order confirmations, repeatedly retained without objection, "may, over time, become part of later contracts." [16]

■ In this case, all of the material facts are undisputed. KKD admits that it received invoices containing the language incorporating the forum selection clause by reference for forty-one shipments prior to the shipments at issue here. It admits that it never objected to that language. Indeed, KKD admits that it received invoices for the shipments at issue, that they contained the critical language, and that it retained those invoices without objection as well. In consequence, this case is even stronger for summary disposition than *Pervel Industries.*

The circumstances relied upon by the Circuit in *New Moon Shipping* to hold that a hearing was required in that case—the fact that the parties there engaged in three different types of transactions involving three different order and confirmation practices, the arguably deceptive character of the language relied upon in that case,[17] and disputes concerning whether the party against whom the forum selection was sought to be enforced actually received key documents—all are absent here. It is important also to recognize that KKD's argument—that it could not have known with absolute certainty when it arranged for the shipments at issue that the invoices for those shipments would be the same as the forty-one invoices it had received for prior shipments—really does not go to whether there was an established course of dealing between the parties. Indeed, it effectively concedes that there was. It goes instead to the legal effect of that course of dealing, a point which is not open

to question in light of *Pervel Industries* and *New Moon Shipping.* Finally, the significance of KKD's retention without objection of the invoices for the very shipments here at issue bears repeated emphasis; that action probably would be sufficient to bind KKD to the forum selection clause even absent the prior course of dealing. In consequence, even viewing all of the facts in the light most favorable to KKD, there is only one reasonable conclusion: these parties, by their established course of dealings and their actions with respect to the disputed shipments, evidenced their intention to be bound by the terms of Dietrich's invoices, which incorporated the forum selection clause by reference.

■ 3. Nor is it material that (1) KKD and Dietrich never discussed or negotiated concerning the forum selection clause, and (2) KKD evidently did not take the trouble to find out what the ADSP standard conditions referred to in the invoices provided. The lack of negotiation has no bearing, particularly where, as here, we are dealing with transactions involving merchants rather than consumer sales.[18] And the fact that KKD allegedly was unaware of the forum selection clause in the ADSP standard conditions is no one's fault but its own. Over a period of years, it received sixty-six invoices incorporating those conditions by reference. It is a sophisticated commercial entity. There is no reason to allow it to use its own inattention to defeat Dietrich's reasonable expectations.

4. KKD contends also that it made requests for services to Dietrich's agent in India and that perhaps India was "the place of that commercial establishment of the forwarder to which the order [wa]s directed", thus making India the sole appropriate jurisdiction.[19] But there is no occasion for this Court to address that contention. For present purposes, it suffices to note that no one contends that New York is a permissible forum under the contracts, assuming that the

---

16. *Id.* at 31.

17. *New Moon Shipping,* 121 F.3d at 32.

18. *See, e.g., Orix Credit Alliance, Inc. v. Mid-South Materials Corp.,* 816 F.Supp. 230, 233

(S.D.N.Y.1993); *cf. Composite Holdings, Inc.,* 992 F.Supp. at 370.

19. Pl. Mem. 4.

forum selection clauses are binding on KKD. In consequence, this Court is obliged to dismiss if the clauses are binding and need not consider which of two other alternatives is the exclusive appropriate forum.

For the foregoing reasons, defendant's motion for summary judgment dismissing the complaint on the ground that the forum selection clauses preclude maintenance of the action in this Court is granted. The Court expresses no opinion on defendant's alternative contention that the claim is barred by the contractual limitations period.

SO ORDERED.